# Fehley *versus* Barr.

1. A judgment for purchase-money was entered against Green, afterwards January 29th, he applied for the benefit of the Bankrupt Law and was discharged as of February 24th. Barr bought his land May 8th, under the judgment; the land was set apart to Green under the bankrupt exemption, and he sold to Fehley. In ejectment by Barr, Fehley alleged that Barr concealed his title and encouraged Fehley to buy. *Held,* that evidence that Fehley had been informed by a stranger of Barr's title was relevant.

2. Fehley testified on cross-examination that he did not know whether the stranger had informed him. *Held,* that this was not collateral and he might be contradicted.

3. The record of proceedings in bankruptcy is only primâ facie evidence of the facts stated in it and may be contradicted by parol.

4. A purchaser at sheriff's sale acquires the interest of the defendant at the date of the judgment, although he may have been adjudged a bankrupt before the sale.

[Fehley *v.* Barr.]

5. The court charged that a judgment under which the land was sold being for purchase-money to the defendant, there was no exemption under the Bankrupt Law. *Held* to be correct.

6. The Court of Common Pleas in which a judgment is entered has jurisdiction after the defendant has been adjudged bankrupt, and a sale by the sheriff would pass a perfect title to the purchaser.

7. The assignee in bankruptcy is not a judicial officer, his setting apart exempt property is not conclusive.

8. The assignee's setting apart land as exempted, does not divest the lien of judgment clear of exemption.

October 20th 1870.　Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Jefferson county :* Of October and November Term 1870 : No. 74.

This was an action of ejectment, by John S. Barr against William Fehley, brought February 8th 1869, for a lot of land in Winslow township.

The cause was tried February 22d 1870, before Campbell, P. J.

The plaintiff proved the title of the land in one W. S. Green, August 22d 1865, and a judgment entered against him December 8th for $100, in favor of Thomas Montgomery, for part of the purchase-money. He also gave in evidence sheriff's sale to him of the lot under the judgment on the 8th of May 1868, and deed from sheriff, dated same day, and acknowledged in open court September 17th 1868.

The defendant then gave in evidence a deed, dated September 14th 1868, for the same lot, from W. S. Green to Fehley the defendant ; record of proceedings in bankruptcy in the case of W. S. Green ; application January 29th 1868, "discharged 18th August 1868, as of 24th February 1868." Return, claim under exemption law for land in dispute ; property set apart for bankrupt including lot in dispute approved by register August 1st 1868 ; Montgomery and Barr's (plaintiff) debts, amongst others, proved August 10th 1868.

He gave evidence that Montgomery assigned the judgment under which the land was sold on the same day.

The defendant testified that he told the plaintiff he was going to buy the land from Green, and plaintiff. told him in answer to defendant's inquiry that he had no claim to it. On cross-examination he testified that the plaintiff did not tell him that he had bought the lot, nor did he know it ; that he did not know whether one Stockdale told him anything about it. He gave other evidence for the purpose of showing that the plaintiff told him that he, plaintiff, had no claim to the lot.

In rebuttal the plaintiff testified that before the sheriff's deed had been acknowledged to him, the defendant came to his house and told him that he, defendant, was about to buy the lot from Green ; plaintiff told him that he had bought ; that in an hour or two after-

[Fehley *v.* Barr.]

wards Fehley and Green came to him together; Green said he had sold the lot to Fehley; plaintiff said, "All right, I have nothing against Green."

Under objection and exception P. A. Stockdale testified: "I told Fehley that Barr had a claim on the property and he had better let it alone; that was before he had bought."

Under objection and exception Thomas Montgomery testified: "I did not prove or offer to prove my judgment against W. S. Green before the register in bankruptcy, only I was a witness for J. S. Barr; I was taken before the register for Barr; I proved no claim of my own."

The plaintiff submitted these points, which were affirmed:—

1. John S. Barr, the plaintiff's vendee, acquired the interest that W. S. Green had in the land at the time of the lien of the judgment under which the land was sold attached, and it would be unaffected by a conveyance of the debtor.

2. The judgment of Thomas Montgomery against W. S. Green on which the land was sold being for the purchase-money of land, as to him there is no exemption law.

3. If, under the judgment of Thomas Montgomery against W. S. Green, the said Green either from the fact that said judgment was for purchase-money or that said judgment waives the right of exemption, could not claim the benefit of $300 out of the land sold under the Act of 1849, he could not under the Bankrupt Act.

4. The Court of Common Pleas of Jefferson county, Pennsylvania, had jurisdiction, and a sale of the real estate by the officer of that court would pass a perfect title to the purchaser, and the assignee in bankruptcy setting aside the land under a claim of exemption under the Bankrupt Act would not affect the title.

The defendant's points and their answers were:—

1. The setting apart to W. S. Green of the property in controversy as an allowance to him in his proceedings in bankruptcy followed by a regular discharge, vested in him a perfect title to such property, clear of all encumbrances. If, therefore, the jury believe the defendant purchased the property thus set apart to said Green from him, it interposes a bar to the plaintiff's recovery.

Answer: "Under the circumstances of this case we think the proceedings in bankruptcy can have no effect on plaintiff's title, the sheriff's sale was made before the property in dispute was set apart to the bankrupt, and the subsequent acknowledgment of the sheriff's deed would vest in the purchaser as good a title as if no proceedings in bankruptcy had ever been commenced. We answer this point in the negative."

2. If the jury believe that the defendant was induced to pay his money to W. S. Green for the property in controversy in consequence of the statement of the plaintiff that his purchase from

[Fehley v. Barr.]

Green was all right, the plaintiff is estopped from asserting any title he at that time had to his prejudice, and he cannot recover.

Answer: "We answer this point; that one who encourages another to purchase land and expend money upon it, cannot set up a better title in himself to defeat the purchaser, if the defendant Fehley wishing to purchase the property, and knowing of the sheriff's sale to Barr, went to Barr and asked him if he had a claim or was going to hold his claim to the premises, and that he told him he was not going to enforce his title or claim, but for him to go ahead and buy, it would be all right, and relying on such statement and disclaimer he bought from Green and paid his money, Barr will be postponed, although his title may have been good. But you must be satisfied that Barr actually made such disclaimer, and that the declaration that all was right referred to Fehley's contemplated purchase, and not to the personal relations between Green and Barr."

The verdict was for the plaintiff.

The defendant took out a writ of error. He assigned for error:—

1, 2. The admission of the evidence of Stockdale and Montgomery.

3–6. The answers to the plaintiff's points.

7, 8. The answers to the defendant's points.

*G. A. Jenks* (with whom were *Jenks & Clark*), for plaintiff in error.—Stockdale was a stranger, and what he said was not notice to Fehley of Barr's title: Kerns v. Swope, 2 Watts 78; Miller v. Cresson, 5 W. & S. 284. Montgomery's testimony was in contradiction of the record, and therefore its admission was error: Selin v. Snyder, 7 S. & R. 170. Proving the judgment under which the lot was sold discharged it and no title passed to Barr: Bankrupt Act of 1867, § 21; Hoffman v. Strohecker, 7 Watts 89; Garrett v. Dewart, 7 Wright 349. Setting apart the lot to Green under his exemption right was a judicial decree and final judgment. It cannot be revised in a collateral proceeding: Yaple v. Titus, 5 Wright 195; Stokely v. Decamp, 2 Grant 18. One who encourages another to purchase cannot set up a better title in himself to defeat the purchaser: Maple v. Kussart, 3 P. F. Smith 348; Carr v. Wallace, 7 Watts 400; Millingar v. Sorg, 5 P. F. Smith 226; Arnold v. Cornman, 14 Wright 361.

*A. L. Gordon* (with whom was *J. Gordon*), for defendant in error.—Stockdale's testimony was in contradiction of Fehley, and was of such a character as to entitle it to credit: Butcher v. Yocum, 11 P. F. Smith 168. The bankrupt record is but primâ facie evidence. The time of the *sale* is the date to which the record must apply: Stewart v. Freeman, 10 Harris 120.

[Fehley *v.* Barr.]

The bankrupt exemption does not override the state law : Ruth's Case, 7 Am. Law Reg. N. S. 161; Donaldson's Case, Id. 213; Campbell's Case, Id. 103.

The opinion of the court was delivered, January 3d 1871, by

SHARSWOOD, J.—The first assignment of error is that the court below erred in admitting the testimony of P. A. Stockdale that he told Fehley before he bought, that Barr had a claim to the land for which the ejectment was brought. If the object of this evidence had been to prove that Fehley had notice of Barr's title so as to affect him as a purchaser for valuable consideration, it would clearly be open to exception as coming from an entire stranger, to whom Fehley was bound to give no attention nor credit : Kerns *v.* Swope, 2 Watts 75; Miller *v.* Cresson, 5 W. & S. 284. But that was not the object of the testimony. It does not appear that there was any question raised at the trial as to Fehley being a bonâ fide purchaser without notice; nor could it have availed him, for he had constructive notice of the judgment upon which the sheriff's sale to Barr was had, and of course of all the proceedings under it. The defendant below did raise a question of estoppel that Barr had concealed his title and encouraged him to go on and complete his purchase. Upon this question it was material to show that he had information, it mattered not from what quarter, that Barr had some claim; for it would tend to sustain the plaintiff's theory that he had sought to entrap him into a declaration which might afterwards be set up as an estoppel. Besides, Fehley had himself been examined as a witness on his own behalf, and had denied or equivocated when asked whether Stockdale had given him this information. He said that he did not know that Stockdale told him anything about it. It was not a collateral fact immaterial to the issue, in which case his answer would have been conclusive. It was competent therefore to contradict him, and affect his credit with the jury.

The second error assigned is to the admission of the testimony of Montgomery—the creditor upon whose judgment the land had been sold by the sheriff to Barr—to the effect that he had not proved his debt before the register in bankruptcy. It is said that this contradicted the record. But we have no copy of this record on the paper-book, and it is always incumbent upon a plaintiff in error to furnish the court with the means of verifying the truth of his assignments. The defendant in error denies in his counterstatement that there is any record of the proof of the debt before the register. All that is there as he avers is a list of debts furnished by the bankrupt to the register. We might dismiss this assignment upon this ground alone. But the Bankrupt Act of Congress of March 2d 1867 provides in the thirty-eighth section that copies of the records of proceedings in bankruptcy, duly cer-

tified under the seal of the court, shall in all cases be primâ facie evidence of the facts therein stated. If then it did appear upon the record that Montgomery had proved his debt, it was only primâ facie and not conclusive evidence of the fact, and could be contradicted by his or any other competent testimony.

The third assignment of error is to the affirmance by the court of the first point of the plaintiff below, which was in brief that a vendee at sheriff's sale acquires the interest of the defendant in the land at the time the lien of the judgment under which it was sold attached, and that he is unaffected by any subsequent conveyance by the debtor. While the correctness of this proposition in general cannot be and is not denied, it is supposed to be erroneous in its application to this case, because the defendant in the judgment had been adjudged a bankrupt before the sheriff's sale. But the twentieth section of the Bankrupt Act before referred to expressly saves the lien of a judgment, unless indeed the judgment-creditor releases or conveys his claim to the assignee, and is admitted to prove his whole debt. He is entitled if he does not do so to proceed and realize whatever he can from his security, and then come in and prove for the balance.

The fourth assignment of error is in affirming the plaintiff's second point that the judgment of Montgomery being for the purchase-money of land, as to him there is no exemption law. The fourteenth section of the Bankrupt Act provides that there shall be excepted from the operation of that section which directs that the register shall convey to the assignee all the estate real and personal of the bankrupt, among other things, "such property as is exempted from levy and sale upon execution or other process, or order of any court, by the laws of the state in which the bankrupt has his domicil at the time of the commencement of the proceedings in bankruptcy to an amount not exceeding that allowed by such exemption law in force in the year 1864." Now the third section of the Act of Assembly of this state, passed April 9th 1849, Pamph. L. 533, entitled "An act to exempt property to the value of three hundred dollars from levy and sale on execution and distress for rent," declares that the right of exemption as to real estate "shall not be construed to affect or impair the liens of bonds, mortgages or other contracts for the purchase-money of the real estate of insolvent debtors." There was therefore no error in affirming this point.

The fifth assignment of error is to the affirmance of the plaintiff's third point, which was in substance that if under Montgomery's judgment Green, either from the fact that it was for purchase-money or that the judgment waives the right of exemption, could not claim the benefit of three hundred dollars under the Act of 1849, he could not under the Bankrupt Act. It is very clear from the express provision of the fourteenth section of the Bankrupt Act

[Fehley *v.* Barr.]

which has just been recited, that there was no error in affirming this point.

The sixth error assigned is in affirming the plaintiff's fourth point "that the Court of Common Pleas of Jefferson county, Pennsylvania, had jurisdiction; and a sale of the real estate by the officer of that court would pass a perfect title to the purchaser, and the assignee in bankruptcy setting aside the land under a claim of exemption of the Bankrupt Act would not affect the said title." Every branch of the proposition thus affirmed by the court is true and accurate. The assignee in bankruptcy is not a judicial officer. His act in designating and setting apart exempt property is not a judgment *in rem* conclusive against all the world. His act of setting apart this land to the bankrupt under the exemption clause of the Bankrupt Act did not divest the valid lien of a judgment-creditor clear of exemption and invalidate the title of the purchaser at sheriff's sale under execution upon that judgment.

It follows from what has already been said that the court below committed no error in their answer to the defendant's first point, which forms the subject of the seventh assignment. Under the circumstances of the case the proceedings in bankruptcy had no effect on the plaintiff's title; the sheriff's sale was made before the property in dispute was set apart to the bankrupt, and the subsequent acknowledgment of the sheriff's deed vested in the purchaser as good a title as if no proceedings in bankruptcy had ever been commenced.

The answer to the defendant's second point, which is complained of in the eighth assignment of error, substantially affirmed it, leaving to the jury to decide upon the evidence the fact whether Barr actually made such a disclaimer of title as was supposed, which was their province. The question of estoppel was therefore fairly submitted to the appropriate tribunal and passed upon by them.

Judgment affirmed.