## Clarence Huffman Motor Company v. Hess et al.

*Constitutional law—Title of act—Lien for purchase money of automobiles—Act of April 27, 1925.*

1. Section 2 of the Act of April 27, 1925, P. L. 286, relating to certificates of title to motor-vehicles and liens thereon, is unconstitutional, inasmuch as the provision or purpose of the section is not referred to in the title of the act.

*Bankruptcy—Lien—Judgment note—Preferred claim—Exemption—Automobiles.*

2. Where a purchaser of an automobile has given a judgment note with waiver of exemption to secure the balance of the purchase money, and subsequently, in bankrupt proceedings, the automobile has been set aside to the bankrupt as his exempted property and the seller's claim for a preference has been refused, and he thereupon withdraws his claim, the seller may thereafter enter judgment on the note and levy upon the automobile at any time before the bankrupt is discharged.

3. In such case, a certificate issued by the highway commissioner to the purchaser and held by the seller gives no lien for the unpaid balance of the purchase money.

Petition to set aside sheriff's levy. C. P. Greene Co., March T., 1927, No. 11.

*W. C. Montgomery,* for plaintiff.

*Charles S. Carter* and *William J. Kyle,* for defendants.

SAYERS, P. J., May 9, 1927.—The matter before the court grows out of a petition filed by Cyrus Howard Hess, one of the defendants in this case, on March 14, 1927, praying the court to set aside a levy made by the sheriff upon the property of petitioner, a certain Hudson automobile coach, fully described in the petition, which was awarded to the petitioner as his exemption in bankruptcy. The petition prays that the levy be set aside forthwith and the sheriff be directed to deliver possession of the property to the petitioner. An answer was filed to this petition by the Clarence Huffman Motor Company.

Clarence Huffman Motor Company v. Hess et al.

Prior to the beginning of this proceeding, a judgment had been entered in favor of the plaintiff, Clarence Huffman Motor Company, and against Mrs. Pauline Hess and C. H. Hess, *alias* Cyrus Howard Hess, at No. 142, March Term, 1927, in the Court of Common Pleas of Greene County, Pa. This judgment was entered Jan. 26, 1927, by confession on a note containing a warrant of attorney to confess judgment, and containing also a waiver of "the benefit of the exemption law or any act of assembly relative to executions now in force or hereafter to be passed."

On Jan. 31, 1927, a petition of the defendants, together with their specific affidavit of defence, was presented to the court, praying that the judgment should be opened and the defendants let into a defence, and a rule was issued thereon, returnable to the first Monday of March, 1927. All proceedings on the judgment and *fieri facias* were stayed until further order of the court, subject to the lien of the levy made on said writ. The plaintiff filed an answer to the rule and petition to open judgment on March 7, 1927. No testimony was taken and nothing has been done by the plaintiff or defendants concerning the rule to open judgment, and without disposing of this rule the defendant, Cyrus Howard Hess, has filed his petition to set aside the levy on the automobile, as hereinbefore set forth. No depositions were taken on the rule to open judgment, and the facts as hereafter found by the court and to which reference was made in arguments of counsel are admitted in the papers filed, and from the file papers the court finds the following

### Facts.

On July 1, 1926, the Clarence Huffman Motor Company sold and delivered to Cyrus Howard Hess and his wife, Pauline Hess, the automobile coach described in the petition for the sum of $800, $300 of the consideration being paid at the time of sale and a balance of $500 remaining unpaid to be secured in the following manner and according to the agreement then entered into between the plaintiff and defendants: The defendants executed and delivered to the plaintiff their certain exemption promissory note with warrant of attorney to confess judgment, dated July 1, 1926, in the sum of $500, in which they agreed to pay the balance of the purchase money on the automobile at the rate of $50 monthly, payable on the first day of each month until paid, with interest. At the same time and as part of the transaction and agreement to secure the payment of the purchase money on this note and in accordance with the provisions of the Act of May 24, 1923, P. L. 425, as amended by the Act of April 27, 1925, P. L. 286, the Clarence Huffman Motor Company endorsed and delivered to Cyrus Howard [Hess] a certificate of title for said automobile, and Hess made application under oath for a new certificate of title, setting forth that the automobile was being transferred subject to the lien for purchase money held by the Clarence Huffman Motor Company to the amount of $500. The State Highway Commissioner issued a new certificate to "Howard Hess," showing that it was subject to a lien for $500 in favor of the Clarence Huffman Motor Company, and this certificate was delivered to the Clarence Huffman Motor Company, which still holds the same as evidence of its alleged lien to secure its legal claim for purchase money, as provided by the last recited act of assembly.

The said defendants subsequently made three payments of $50 each upon said note and on account of their said contract to pay for the automobile.

On Nov. 12, 1926, Cyrus Howard Hess was declared a voluntary bankrupt by the United States District Court for the Western District of Pennsylvania, and he filed his schedules in bankruptcy and performed such other acts as

were required of him by the bankruptcy law, and on March 9, 1927, filed his petition for a discharge in bankruptcy. The bankrupt has not yet obtained his discharge.

The Clarence Huffman Motor Company, on Dec. 24, 1926, filed a proof of claim against the bankrupt in the sum of $358.55, claiming on the note and contract for the sale of the automobile as a secured claim. The referee refused to allow the claim as a secured claim or to pass upon the question as to whether or not the claim of the plaintiff was a lien against defendants' automobile, and the proof of claim was withdrawn by the Clarence Huffman Motor Company.

On Dec. 13, 1926, the Hudson automobile coach was valued and appraised and set aside to the bankrupt as his exemption, and on Dec. 24, 1926, the Clarence Huffman Motor Company filed exceptions to his claim for exemption, and in these exceptions the motor company claimed to have a lien for unpaid purchase money on the automobile set apart to the bankrupt as his exempted property. The exceptions were dismissed by the referee in bankruptcy and no appeal was taken from the order of the referee. On the same day, Jan. 26, 1927, judgment on the said note was entered in this court on warrant of attorney and confession, and execution was issued thereon and placed in the hands of the sheriff, who levied upon the Hudson coach belonging to defendant, Cyrus Howard Hess, or to both defendants, as the case may be.

It is admitted in the petition to open the judgment filed by the defendant that the note on which the judgment was entered was given to secure payment of the purchase money on the automobile, and it is not denied by him in any of the papers filed that, as a part of his arrangement to secure the balance of the purchase money on this automobile, a certificate of title was secured from the State Highway Commissioner, setting forth that the title was in "Howard Hess," one of the defendants above named, subject to the lien of the Clarence Huffman Motor Company for the balance of the purchase money remaining unpaid on the said automobile.

## Discussion.

It is claimed by the plaintiff in this case that at the time the automobile was set apart to the bankrupt as a part of his exemption the plaintiff had a legal claim or lien on the automobile, which was evidenced by the note on which judgment was entered and secured by the lien reserved in the certificate of title issued to the bankrupt by the State Commissioner of Highways, and that said lien was properly filed and secured to the defendant in the manner required by law and can be enforced by the entry of judgment on the note and execution thereon, as has been done in this case. The petitioner, Cyrus Howard Hess, claims that the plaintiff had no lien on the Hudson coach at the time he became a bankrupt, and that the note on which judgment and execution was issued in this case was a provable claim in bankruptcy, and that the plaintiff, having notice of the bankruptcy proceeding and having offered to prove his claim, the debt evidenced by the said note was discharged and the plaintiff thereafter had no right to enter judgment upon the note and to issue execution thereon and levy upon the property of the defendant, Cyrus Howard Hess. The plaintiff replies by stating that the automobile having been claimed by the bankrupt as a part of his exemption and set apart to him was subject to plaintiff's lien as reserved in the certificate of title from the State Highway Commissioner, and as evidenced by the note taken as a part of the contract to secure the purchase money, and that the plaintiff now has a right, in order

Clarence Huffman Motor Company v. Hess et al.

to enforce its lien, to enter its judgment and to proceed by execution to sell the automobile of the defendant.

There does not seem to be any construction by the courts as to the effect and operation of the lien clause in the Act of 1925, providing for the registration of titles to motor-vehicles. The amended section 2 of the Act of April 27, 1925, P. L. 286, provides, inter alia: "Said certificate of title shall contain such description and other evidences of identification of said motor-vehicle as the commissioner may deem reasonably necessary and proper, together with a statement of any liens, encumbrances or legal claims which the applicant may show to be thereon, together with the name and address of holder of said lien, encumbrance or legal claim, and said certificate of title shall be delivered to the person holding the first lien, encumbrance or legal claim upon said motor-vehicle and retained by such person until the entire amount of such lien, encumbrance or legal claim is fully paid by the owner of said motor-vehicle, when the said certificate of title shall be delivered to said owner."

If it was the purpose of this act to create, secure or preserve a lien in favor of the vendor of motor-vehicles, or provide for the filing or registering with such purpose in view of "a statement of lien, encumbrance or legal claim" as a lien, it fails utterly. The title to the act, as amended, reads as follows: "To amend sections one, two, three, six, seven, thirteen, fifteen and sixteen of an act approved the twenty-fourth day of May, one thousand nine hundred and twenty-three (Pamphlet Laws, four hundred and twenty-five), entitled 'An act providing a system of registering titles to motor-vehicles for the protection of owners of motor-vehicles and to facilitate the recovery of motor-vehicles stolen or unlawfully taken; regulating the certification of such titles, the purchase, sale and transfer of motor-vehicles, and their registration; providing for the collection of fees, for the certification of titles, and for disposition thereof; forbidding the destruction, removal, alteration, covering or defacement of any engine, manufacturer's or other distinguishing number or identification mark on motor-vehicles; and providing for the assignment of special numbers in certain cases; imposing duties on the State Highway Commissioner, sheriffs, constables, police officers and other peace officers; and providing penalties."

The title fails to give notice of any such provision or purpose, and, consequently, that part of section 2 relating to the notation in the certificate of title of a lien and the delivery of the certificate to the claimant to be held until the lien, encumbrance or legal claim is fully paid by the owner can have no effect to create, secure or preserve to said claimant any lien on the motor-vehicle. If such was the purpose of this section, it violates article III, section 3, of the Constitution of this State, because this provision of the act is not referred to in the title. See Com. v. Smith, 8 D. & C. 702, discussing another clause in the same act.

For this reason, we do not agree with the claimant that the issuing of a certificate of title to the purchaser, setting forth the amount of encumbrance or lien and delivery thereof to the holder of said lien, is the manner especially provided by law in Pennsylvania for evidencing and making secure to the holder thereof a lien or encumbrance against an automobile. It is apparent from the language of this part of section 2 that some effort was being made to protect lien holders or legal claimants, but the very fact that no such purpose is expressed in the title of the act makes it doubtful as to what the legislature really did intend.

Clarence Huffman Motor Company v. Hess et al.

Whether or not title can only be transferred by the State Highway Commissioner, as provided in the Act of 1925, as and when the full amount of the claim or lien has been paid is a matter with which the court has no concern at present. In the opinion of this court, and for the further reason above set forth, we think he would have no right to refuse to transfer the title because of unsatisfied legal claims. The act of assembly giving him power in the premises gives him no authority to determine whether or not an alleged legal claim against the title is or is not an encumbrance.

We feel that the claimant, having withdrawn his claim, is in the same situation as a creditor with notice of bankruptcy, who did not present his claim to the referee. The claimant here is, then, relegated to his judgment note as the sole evidence of his claim, and it has no semblance of a conditional sale or bailment contract. It is admitted by plaintiff in his argument and brief "that no conditional sale contract or bailment lease was executed between the parties, and that the note and application for and certificate of title are the sole contract between the parties." The foundation of the claim is a promissory note under seal with warrant to confess judgment and waiving inquisition, and lien thereunder could be secured only by entering judgment on the warrant, issuing execution and obtaining a levy on the motor-vehicle, as was done in this case.

The statement in the certificate of title that there was a lien in favor of the Huffman Motor Company for unpaid purchase money would not change the note, which was but evidence of a debt, into a lien or encumbrance.

The fact that the note was for an unpaid balance of purchase money on said automobile does not and cannot make the claim a lien on the same, where the bankrupt has set aside to him the automobile as his exemption.

Can a creditor who has full notice of the bankruptcy proceeding, and whose claim was listed, enter judgment after the bankruptcy and before the bankrupt is discharged upon a judgment note made before the bankruptcy, containing a waiver of exemption, and issue execution and levy upon the property set apart to the bankrupt as his exemption?

It is a well settled principle of law that where property is set aside to a bankrupt as his exemption, the ownership of it simply remains in him as it was, and that if there was a lien against it before the bankruptcy, he still holds it subject to the lien. "The exemption is created by the State law, and the assignee acquires no title to the exempted property. If the creditor has a claim against it, he must prosecute that claim in a court which has jurisdiction over the property, which the bankrupt court has not:" Lockwood v. Exchange Bank, 190 U. S. 294; Progressive Co. v. Friedman, 81 Pa. Superior Ct. 151-155.

Section 67 (d) of the Bankruptcy Act provides: "Liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall, to the extent of such present consideration only, not be affected by this act." We have already concluded that plaintiff had no lien by virtue of any record in the office of the State Highway Commissioner.

The facts in this case should not be confused with the line of cases holding that where a judgment was entered, or a lien was secured by execution, levy or attachment before bankruptcy, on a note containing a waiver of exemption, if such property be set aside to the bankrupt as his exemption, the lien secured by the levy before bankruptcy remains and the bankrupt takes the property subject to that lien, so that the judgment creditor may proceed to

have the sheriff sell the property: Fehley v. Barr, 66 Pa. 196; Bassett v. Baird, 85 Pa. 384; Streeper v. McKee, 86 Pa. 188; Greenfield v. Golder, 42 Pa. Superior Ct. 462; Progressive Co. v. Friedman, 81 Pa. Superior Ct. 151.

The petitioner in this case claims that the situation is exactly similar to the case of Claster v. Soble, 22 Pa. Superior Ct. 631. It is there held that "where a creditor of a bankrupt, holding a judgment note with a waiver of exemption, does not present it in bankruptcy proceedings, although he has knowledge of such proceedings, and in fact proves other claims, he cannot thereafter enter up the judgment note and enforce the judgment against the bankrupt or against goods set apart by the trustee in bankruptcy to the bankrupt under his claim for exemption under the bankrupt law."

It appears in the last recited case that the defendant was adjudicated a bankrupt as of Feb. 4, 1901, and the judgment was entered on the note April 22, 1901, and fi. fa. issued the same day. The levy was made on the goods and property set aside to the bankrupt as his exemption, and on application to the court by petition similar to one in this case, the writ of fi. fa. was stricken off. The bankrupt's discharge had been granted in that case. It is nowhere set forth in the reported case when the judgment was entered and levy made with reference to the date of the bankrupt's discharge. The decision in that case seems to be overruled in the later case of Realty Co. v. Gioshio, 50 Pa. Superior Ct. 185, 189. In the last recited case the defendant became a bankrupt on Dec. 29, 1910, and the plaintiff, without presenting his claim before the referee in bankruptcy, entered his judgment on Feb. 14, 1911, issued an execution and caused the sheriff to levy upon personal property that had been set aside as the defendant's exemption. In the Gioshio case, discussing the case of Claster v. Soble, the opinion of the Superior Court proceeds as follows:

"Therefore, that case does not touch the point under consideration. As to Claster v. Soble, 22 Pa. Superior Ct. 631, it must be conceded that the facts in it are much like those in the present case. We have examined the printed arguments in that case and the opinion of this court, and we conclude that the point was not raised and decided that, notwithstanding the discharge of the defendant and his release from personal liability, the levy and lien of the execution on his exempted property might have been sustained. That point not having been specifically raised and decided, we do not feel bound by that decision upon the facts and questions raised in the present case. In our case, after the bankruptcy proceedings had released and restored the exempted goods to the possession of the defendant, the sheriff levied upon the same. After said seizure, the goods were virtually in the possession of the sheriff in the custody of the law. The question then arises, why should the discharge of the defendant in bankruptcy, his release from personal liability, operate to take the chattels from the sheriff and restore them to the former owner? We understand both the law and the practice in bankruptcy makes a distinction between the release from personal liability and the release from a valid lien effected by a discharge in bankruptcy. Conceding that the bankrupt's discharge releases him from personal liability, why should not the lien continue on the property and the plaintiff be permitted to sell that property for the satisfaction of his debt? . . .

"The United States Supreme Court recognizes the right of creditors in whose favor exemption has been waived to proceed against the exemption set apart to the debtor under the state law, and also the right of the court to withhold the discharge of the bankrupt, if he be otherwise entitled thereto,

until a reasonable time has elapsed for the excepting creditor to assert in a state tribunal his alleged right to subject the exempt property to the satisfaction of his claim: Lockwood v. Exchange Bank, 190 U. S. 294.

"In the present case the plaintiff did not need a stay of proceedings in the bankruptcy court as to the discharge of the defendant, because the plaintiff was proceeding legally, before the discharge, to sell the exempted property after it had been appraised and delivered to the defendant, when, at the instance of the defendant, the court stayed the plaintiff's writ till the defendant had procured his discharge. Now, to hold that this not only relieved the defendant from personal liability for the plaintiff's claim, but also discharged the exempted property from the lien of the levy and took it out of the custody of the law, would allow the defendant to take advantage of his own wrong. If the plaintiff was proceeding lawfully to sell the exempted property till the execution was stayed by the court, there can be no doubt but said stay was illegal, and, therefore, the defendant should gain no advantage therefrom. We think a correct conclusion is reached by holding that the discharge in bankruptcy released the defendant from personal liability to the plaintiff and released his other property from plaintiff's claim, but left the lien of the levy valid and capable of enforcement."

The effect of this decision is that the judgment creditor under this waiver of exemption had a right to enter judgment and obtain a valid levy and lien against the exempt property at any time before the bankrupt was actually discharged.

A discharge goes to the remedy; it does not cancel the debt. It destroys the remedy on all provable debts other than those falling within the exceptions of section 17 (1 Collier on Bankruptcy, 596), and relates back to the date of the adjudication (page 600). A judgment obtained more than four months prior to the adjudication could not be enforced thereafter personally against the bankrupt, though it might be a lien against his real estate, and a levy or attachment might make it a lien on his personal property. But it seems that the holder of a judgment exemption note may proceed even after petition is filed to enter his judgment and proceed by levy or attachment, as the case may be, against the exempt property.

We have a recent case in the Superior Court, Progressive Co. v. Friedman, 81 Pa. Superior Ct. 151, deciding that the debtor's exemption is subject to the claim of a creditor as to whom the bankrupt has waived his exemption, and attachment execution is an appropriate process to reach it. In the last recited case the judgment was entered prior to adjudication. The trustee sold all the bankrupt's property, including the part claimed as his exemption, and set aside these proceeds in lieu of the exempted property. Attachment execution was issued and served on the trustee. The bankrupt petitioned, inter alia, to set aside the attachment execution. The rule was made absolute by the court below. The Superior Court said: "There could be no doubt of the propriety of the court's action if the obligation of the defendant were a promise to pay without a waiver of exemption and without a levy before the bankrupt's discharge. . . . The exemption is created by the State law and the assignee acquired no title to the exempt property. If the creditor has a claim against it, he must prosecute that claim in a court which has jurisdiction over the property which the bankrupt court has not. This view was restated in Lockwood v. Exchange Bank, 190 U. S. 294, wherein . . . 'the district court was directed to withhold the discharge of the bankrupt until a reasonable time had elapsed for the executing creditor to assert in the state tribunal his right to subject the exempt property to the satisfaction of this

Clarence Huffman Motor Company v. Hess et al.

claim.' In Chicago, B. & Q. R. R. Co. v. Hall, 229 U. S. 511, it was decided that section 67 (f) of the Bankrupt Act does not defeat a creditor's right in the exempt property acquired by contract or by waiver of exemption. These may be enforced or foreclosed by judgments obtained even after the petition in bankruptcy was filed."

Following the line of reasoning in the above case as we understand it, we have arrived at the following

### Conclusions of law.

1. That the certificate of title from the State Highway Commissioner held by the plaintiff in this case does not of itself create, enlarge or preserve any lien in favor of the plaintiff against the automobile described in the said certificate of title.

2. That the contract for the purchase of the automobile, the judgment note taken for the purchase money and the alleged legal claim or lien set out in the certificate of title for the automobile held by the plaintiff, taken together, do not create, enlarge or preserve any lien against defendant's automobile and in favor of the plaintiff.

3. That, under the facts in this case, the plaintiff has a right at any time before the bankrupt is discharged to proceed by execution and levy upon the automobile set apart to the bankrupt as his exemption and collect his debt.

And now, May 9, 1927, after consideration of the papers filed and the briefs and arguments of counsel, the rule to show cause why the levy made upon the property of the petitioner should not be set aside is discharged, at cost of the petitioner.                                    From S. M. Williamson, Waynesburg, Pa.